INDUSTRIAL TRUST COMPANY *vs.* HARRY ARABIAN.

JANUARY 6, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

Moss, J.   This is an action of assumpsit to recover the unpaid balance of principal, plus the unpaid interest, on a promissory note for $2625, dated July 6, 1932 and signed by the defendant and G. S. Ghazarian as joint and several makers.   To this note were and are attached, as collateral security, two other promissory notes, made by G. S. Ghazarian to the plaintiff and the payment of each of which was guaranteed by Haigoshi Ghazarian and the defendant.   One of these two notes is for $2000 and is dated January 6, 1932 and payable April 6, 1932.   The other is for $625 and is dated January 21, 1932 and payable March 21, 1932.

The first count of the declaration is in special assumpsit based on the note first above described.   This is followed

by the common counts. The defendant pleaded the general issue and also the statute of limitations, to the latter of which defenses the plaintiff filed a replication. By a stipulation filed by the parties it was agreed that the original writ should have the same force and effect as if by it the defendant and G. S. Ghazarian, "commorant of said Providence" in this state, had been summoned and a return had been made thereon that service could not be made on the latter because he could not be found in this state, and that he was a resident of California.

The case was tried before a justice of the superior court, sitting without a jury, who later filed a decision for the plaintiff for the amount of unpaid principal on the note sued on and the accumulated interest. The case is now before us on the defendant's bill of exceptions, in which the only exception stated is to this decision.

The first defense relied on by the defendant at the trial in the superior court and also before us is that there was no consideration for the note sued on. The evidence on this point was very largely documentary and undisputed and showed the following facts. On February 24, 1932, Ghazarian was adjudicated bankrupt on his own petition, there being then held by the plaintiff the two notes above described as attached to the note sued on. In the schedule of indebtedness filed with his petition the dates and maturities of these notes were not set forth correctly. But the trial justice made a finding that they were the same notes; and we cannot say that this finding was clearly wrong or that in making it he overlooked or misconceived any of the evidence.

The plaintiff insisted that the defendant, as a guarantor, should pay these notes at their maturity. But after some negotiations it was agreed between them that he should take them up by executing and delivering to the plaintiff a new note for $2625, being the total amount of the two old notes; that he should then file a claim, in the bankruptcy proceeding, for the total amount which would then be payable by

Ghazarian to him by reason of the taking up of these two notes at the bank by the defendant; and that he should then execute and deliver to the bank an assignment of any dividend which he might later receive on this claim, and should also deliver back to the bank, with the assignment, these overdue notes, all as collateral security for the new note for $2625, which he would make and deliver to the bank.

This agreement was carried out by him; and, as a result of its being carried out, the plaintiff received the note which is the basis of this action and which was signed, as above stated, by both the defendant and Ghazarian as joint and several makers and was secured by the two earlier notes and by an assignment by the defendant to the plaintiff of his claim filed in the bankruptcy proceeding and based on his payment of the two earlier notes. One of the officials of the plaintiff bank testified that this note might be a renewal of a similar, earlier note; and some records kept by plaintiff and filed as an exhibit in this case strongly indicate that the note sued on was a renewal of a similar note for the same amount negotiated at the plaintiff bank on April 28, 1932 and payable on July 6, 1932. We cannot see how it can make any difference in the result of this case whether or not there was such an intervening note. No dividend was ever paid in the Ghazarian bankruptcy proceeding and therefore the assignment by the defendant to the plaintiff of his claim, based on the two earlier notes, proved to be of no value.

The trial justice, after discussing the evidence as to the consideration for the note sued upon, found that there was full consideration for it. The basis given for this finding was, in substance, that the plaintiff, being entitled to demand of the defendant, as guarantor, the immediate payment of each of the two notes which were dated respectively January 6 and 21, 1932, and aggregated $2625, and the maker of which had gone into bankruptcy, without having paid anything on either of them, consented to accept from the defendant, in lieu of the payment of the old notes, his own

new note for $2625, to be secured as above stated. Upon consideration of the evidence we cannot say that this finding was clearly wrong or that in making it he overlooked or misconceived any of the evidence.

Another defense relied on by the defendant is that he was released from liability to the plaintiff on this note because certain shares of the stock of a certain corporation were pledged by the defendant with the plaintiff as collateral security for the note sued upon and were not accounted for by the plaintiff. The note itself shows no such pledge. The employees of the bank, who would have known of such a pledge, if there had been any, denied any knowledge of it and there was nothing in the bank's records to support such a defense.

The defendant testified that in or about 1932 he turned over to the plaintiff certain shares of such stock "as a collateral like"; that the shares were "made to my name"; and that it was the "money" of Ghazarian, who gave them to the defendant to turn them over to the plaintiff. On the other hand, the schedule of debts, which was filed by Ghazarian with his petition in bankruptcy, showed a promissory note of the bankrupt for $5000 payable to the defendant and secured by these same shares of stock.

After discussing and weighing the evidence on this subject, with apparent fairness and fullness, the trial justice found that no such shares of stock were pledged by the defendant with the plaintiff as collateral security for the note sued on in this case. From the evidence we cannot say that this finding, which was fatal to this defense of the defendant, was clearly wrong.

The only other defense which is relied on by the defendant is that of the statute of limitations. G. L. 1938, c. 510, § 3. Under this he first contends that, although the note involved is a joint and several note, it was sued upon *only* as a several note of the defendant; and that therefore payments by Ghazarian, of interest and on account of principal, could not affect, as against the defendant, the opera-

tion of the statute. But in the first count of the declaration it is described as a joint and several note, and the note itself, attached thereto and made a part thereof, was a joint and several one. Therefore it must be so treated in dealing with this defense.

There was some testimony which indicated that one or more of the many payments of interest, which were made on the note and which, if made by the defendant from his own funds, would clearly have prevented the action from being barred under the statute, had in fact been so made by him; but there was also positive testimony by him to the contrary and no finding by the trial justice that there had been any payment made by the defendant in person or with his own funds. Therefore we shall not rely on any such payment in reaching our conclusion as to the defense based on the statute, but shall assume that none of the payments was made by the defendant from his own funds.

But there was clear and uncontradicted evidence of payments of interest and on account of principal, which were made in the name of the other comaker, Ghazarian, and with money supplied by him, if not by the defendant, and which, if they operated in favor of the plaintiff as against the defendant as well as against Ghazarian, would do away with the defense of the statute. The last of these payments was made on August 24, 1939, and covered interest to September 15, 1939.

By reason of the way in which these payments were made, we find it unnecessary to apply or discuss the doctrine which was applied in *Perkins, Admr.* v. *Barstow,* 6 R. I. 505 (1860), and *Woonsocket Institution for Savings* v. *Ballou,* 16 R. I. 351 (1888), that payments made by one of two joint makers of a promissory note operate not only to prevent the statute of limitations from running in *his* favor, but also to prevent it from running in favor of the other maker.

The following facts were clearly established by the undisputed testimony of the defendant himself and his bookkeeper, who testified in his behalf. On many occasions,

when this note was overdue, a certain employee in the discount department of the plaintiff bank called the defendant on the telephone concerning overdue interest on the note. While Ghazarian was living in this state, the defendant would then call him by telephone and urge him to make payment of such interest. After Ghazarian went to California to live, the defendant would then write to him urging him to pay such interest.

On several occasions, eight or nine, Ghazarian's brother-in-law delivered money to the defendant and requested him to pay it to the plaintiff as interest on the note. On these occasions the defendant received the money, delivered it to his bookkeeper and directed her to pay it on behalf of Ghazarian to the plaintiff, as interest on the note. This she did and received receipts running to Ghazarian which she delivered to the defendant; and he sent them to Ghazarian. These events, she testified, happened a few years before the trial of the case, which was in November, 1940.

We find that it is the rule supported by the greater weight of authority and by sound principle that if one joint debtor knows of and consents to a payment by another joint debtor of interest or a part of the principal, or directs or requests another joint debtor to make such a payment, or ratifies such a payment, the payment will not only interrupt the running of the statute of limitations as to the latter but also as to the former. See note in 71 A. L. R. 375, at 399, and cases cited.

In *Whipple* v. *Stevens*, 22 N. H. 219 (1850), at 227, the court says: "This case we regard as clearly distinguishable from those cases in which it has been decided that a partial payment, by one joint debtor, will not take the case out of the statute of limitations as against another, who was not present. In the latter case, no assent can be implied; the party not being present, and having no opportunity to signify his dissent. The payment, in the present case, must be considered as having been made with the full assent of the defendant, implied from his presence and silence; and

we regard such a payment as equivalent to a payment by the party attempted to be charged, and as having, as evidence of a new promise, the same legitimate operation. In this case, Ames was merely surety, and paid the money, it is to be presumed, out of his own funds; and the payment 'upon his own account' could be understood in no other sense, than a payment in discharge of his own liability as such surety, which at the same time operated to discharge, to the same extent, the direct liability of the defendant, to the payee of the note."

In *Roles* v. *Roles,* 58 N. D. 310 (1929), at 315, the court says: "Whatever conflict there may be in the authorities with reference to the effect upon the liability of a joint or joint and several obligor of a partial payment made by a co-obligor, the general rule is that, where such payment is made upon the request of, or by the direction of, or under an express agreement with, such obligor, or where he subsequently ratifies the payment, it will toll the statute as to him." See also *Glick* v. *Crist,* 37 Ohio St. 388 (1881):

This being the law, we cannot, on our view of the evidence as to the manner in which these payments were made, say that the trial justice was clearly wrong in finding, as he did, that such payments were for the benefit of the defendant as well as Ghazarian. The defendant contends, however, that he was only a guarantor on the note in question and that therefore the payments made by Ghazarian did not prevent the former from relying upon the statute. It may be that as *between them* it was Ghazarian's moral duty to exonerate the defendant from having to pay the note. But, on the other hand, it is clear that the plaintiff, in receiving the note from the defendant, instead of insisting that he pay in cash the two previous notes on which he was guarantor, did so as a favor to him and on his credit alone, Ghazarian being then a bankrupt. On the evidence the defendant was not a guarantor but a maker.

Hence we can see no reason why in this case, under the rule of law above stated, the payments made with money

furnished by Ghazarian at the request of the defendant and paid, through the latter's agency, to the plaintiff should not operate to prevent the defendant from being discharged under the statute of limitations. We find that the defense based on that statute is without merit.

The defendant's exception to the decision of the trial justice is overruled, and the case is remitted to the superior court for entry of judgment for the plaintiff on the decision.

*Andrew P. Quinn, Richard F. Canning, Daniel J. Murray,* for plaintiff.

*Aram A. Arabian,* for defendant.